**NEWMAN JONES PLLC**
14747 N. Northsight Blvd., Ste. 111-143
Scottsdale, AZ 85260
Tel: (480) 686-7762
Christine N. Jones (AZ Bar No. 018425)
*Pro Hac Vice*
cjones@newmanjones.com
Alexandra V. Boles (AZ Bar No. 039387)
*Pro Hac Vice*
aboles@newmanjones.com

**McKOWN BAILEY**
Aaron M. McKown (SBN 208781)
Giovanna Castro-Kalagian (SBN 359634)
520 Newport Center Drive, Suite 470
Newport Beach, CA 92660
Telephone: (949) 858-3200
E-Mail: aaron@mckownbailey.com
giovanna@mckownbailey.com

Attorneys for Plaintiff
S.R.BRAY, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| S.R.BRAY, LLC, a California limited liability company,<br>Plaintiff,<br>vs.<br>SEAN FEUCHT MINISTRIES, INC., a Pennsylvania domestic nonprofit corporation,<br>Defendant. | CASE NO: 8:26-cv-00527<br>**FIRST AMENDED COMPLAINT**<br>**Jury Trial Demanded** |

Plaintiff, S.R.Bray LLC, a California Limited Liability Company ("Plaintiff"), by and through their undersigned counsel, alleges against Defendant Sean Feucht Ministries, Inc. ("SFM") as follows:

## PARTIES

1. Plaintiff is a California limited liability company with its principal office at 5500 East La Palma, Anaheim, California 92807.

2. Defendant Sean Feucht Ministries, Inc. ("SFM") is a Pennsylvania nonprofit corporation. On information and belief, SFM maintains its principal place of business at 310 Third Street NE, Washington, D.C. 20002. Its registered office is located at 8 South 16th Street, Camp Hill, Pennsylvania 17011.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a citizen of California because its sole member, Steve Bray, is a citizen of California. SFM is incorporated in Pennsylvania and, on information and belief, maintains its principal place of business in Washington, D.C. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks recovery of at least $250,000, exclusive of punitive damages, restitution, attorneys' fees, costs, and interest.

4. This Court has personal jurisdiction over SFM because SFM, through its authorized representative Feucht, purposefully directed the conduct giving rise to Plaintiff's claims toward California. On March 6, 2023, Feucht traveled to Plaintiff's Anaheim, California office and personally solicited Plaintiff's $250,000 grant on SFM's behalf. The alleged misrepresentations by Feucht, on behalf of SFM, were made in Anaheim, California, Plaintiff's reliance occurred in California, and Plaintiff's resulting injury was suffered in California.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the March 6, 2023 solicitation at Plaintiff's Anaheim office

and Plaintiff's ensuing decision to authorize the grant.

**FACTUAL ALLEGATIONS**

6. At all times relevant to this Complaint, Plaintiff acted by and through its sole member, Steve Bray ("Bray"), a natural person and a citizen of the State of California.

7. At all times relevant to this Complaint, Mr. Bray maintained authority to act on behalf of Plaintiff.

8. At all times relevant to the March 6, 2023 solicitation and the March 2023 payment described below, Feucht was the founder, President, and an authorized representative of SFM and acted on SFM's behalf in soliciting charitable contributions, including the payment made by Plaintiff in reliance on Feucht's representations and omissions.

9. On March 6, 2023, Feucht met in-person at Plaintiff's office at 5500 East La Palma Avenue, Anaheim, California with Bray, Nancy Bray, Sam Cerny, Mike Lang, Steve Nameroff, and Beth Kaura. In addition, Dan Dyk participated by video.

10. During the March 6, 2023 meeting, Feucht, acting on SFM's behalf, solicited financial support for the 2023 Let Us Worship—Kingdom to the Capitol Tour (the "Tour"). Specifically, Feucht explained that SFM intended to host a tour event in all 50 state capitols and that SFM needed to raise money in order to cover the cost of each event. In response, Bray asked Feucht the cost for SFM to conduct one of the contemplated state-capitol events. Feucht responded that the cost was approximately $50,000 per event and explained that the expense included staff compensation, permits, travel, hotels, band expenses, fuel, bus-driver compensation, parking, food, and other Tour-related expenses.

11. During the same in-person discussion, Bray asked Feucht about approximately $5 million in funds that SFM appeared to have available. Feucht responded that those funds were already committed or allocated to other projects and that SFM needed additional funds for the planned state-capitol events.

12. At no time during the in-person meeting on March 6, 2023 did Feucht disclose a third party – Turning Point USA ("TPUSA") – had already agreed to fund all of the costs of the Tour, as alleged more fully below. Feucht was fully aware of SFM's agreement with TPUSA prior to the March 6, 2023 and knowingly withheld the existence of the TPUSA agreement from Plaintiff because Feucht knew that Plaintiff would not agree to pay the charitable contribution Feucht was soliciting from Plaintiff if he disclosed the agreement. The contemporaneous meeting minutes maintained by Beth Kaura corroborate the purpose of Feucht's solicitation by identifying Feucht's presentation concerning the Tour and the meeting participant's ensuing discussion of financial support for the Tour as well as the absence of any disclosure of TPUSA's involvement with the Tour, let alone its agreement to pay for the very expenses that Feucht was soliciting Plaintiff to pay.

13. During the March 6, 2023 meeting, Feucht represented orally to Bray, Nancy Bray, Sam Cerny, Mike Lang, Steve Nameroff, Beth Kaura, and Dan Dyk that each state-capitol event would cost approximately $50,000 and that SFM was in need of finding donors to cover those Tour expenses. This representation supplied the basis for the amount of Plaintiff's $250,000 contribution. Specifically, based on Feucht's representations and omissions during the March 6, 2023 in-person meeting, Bray proposed that Plaintiff fund five state-capitol events, resulting in a proposed contribution of $250,000. The substance of the solicitation is corroborated by contemporaneous meeting notes maintained by Ms. Kaura.

14. Following Feucht's presentation, the meeting participants approved a $250,000 contribution for the purpose of covering Tour expenses of at least five state-capitol events as reflected in the contemporaneous minutes. Bray thereafter caused Plaintiff to make the $250,000 payment in reliance on Feucht's representations and omissions concerning the Tour's stated event costs, SFM's existing funds being committed elsewhere, and SFM's asserted ***need*** for funds for the planned capital events.

15. Later that day, Kaura informed Feucht by email that $250,000 had been approved for the Tour, to be delivered into SFM's general fund, with the understanding that SFM would apply the contribution to the Tour-related need presented by Feucht. Feucht responded via email that same day, expressed gratitude for the contribution, asked whether the funds could be wired, and provided SFM's banking and ministry information. Plaintiff would not have made the contribution had it known that TPUSA had already agreed to fund all of the costs of all 50 state-capital events.

16. As part of the pre-contribution diligence concerning SFM, SFM provided a written FY2022 financial report (the "2022 Financial Statement"). The 2022 Financial Statement included a letter from Feucht, in his capacity as President of SFM, stating that SFM had grown from approximately $283,000 in its first year of operations to approximately $5.3 million and that SFM was "truly honored to be considered for support."

17. The 2022 Financial Statement represented that SFM had raised $5,314,148 in 2022 and had spent $653,587 on more than thirty national events, "averaging just $21,786 per event." The same Financial Statement represented that SFM then held $4,217,655 in "Designated Giving and Funds in Reserve for special projects."

18. Under the heading "2023-2024 Kingdom to the Capital campaign," the 2022 Financial Statement further represented that SFM was "raising $118,000 per state capital city for a major multiple day campaign/event," that the 2023 budget contemplated twenty-five events totaling $2.95 million, and that SFM's stated budget need for the 2023 and 2024 campaigns was $5.9 million over twenty-four months.

19. Neither Feucht nor the 2022 Financial Statement disclosed that, before the March 6, 2023 solicitation, TPUSA had entered into a funding arrangement with SFM under which TPUSA had agreed to fund all of the costs of the Tour, including staff compensation, permits, travel, hotels, band expenses, fuel, bus-driver

compensation, parking, food, and other Tour-related expenses.

20. In reliance on Feucht's March 6, 2023 representations and the financial information SFM had provided in the 2022 Financial Statement, Bray caused funds totaling $250,000 to be deposited from Plaintiff's accounts into a donor-advised fund with National Christian Foundation ("NCF"), where Plaintiff, through Bray, maintained advisory control over the payment.

21. NCF's contemporaneous payment-confirmation record reflects that the $250,000 payment was submitted on March 7, 2023 at approximately 3:00 p.m. and identifies the proposed recipient as "Let Us Worship (Sean Feucht Ministries)," at 310 Third Street E, Washington, D.C. 20002. The record states in the "Note to Charity" field: "Other/Multiple – 2023 worship at capitals and other cities."

22. At the time the March 2023 payment was submitted and paid, the Texas nonprofit corporation later named "Let Us Worship" had not yet been formed. NCF's March 2023 record instead expressly identified the recipient as "Let Us Worship (Sean Feucht Ministries)" and used SFM's Washington, D.C. address.

23. The same NCF record reflects that the $250,000 grant was completed on March 8, 2023, cleared to SFM on March 13, 2023, and was issued as Check No. 2534452. SFM knew the funds originated from Plaintiff. Plaintiff alleges that this was the transaction caused by its reliance on Feucht's March 6, 2023 representations and omissions.

24. Unbeknownst to Plaintiff, before March 6, 2023, SFM entered into a funding arrangement with TPUSA concerning the payment of all Tour expenses. Plaintiff's allegations concerning that arrangement are based on: (a) contemporaneous SFM and TPUSA business records; (b) SFM invoices and reimbursement materials submitted to TPUSA during the Tour; (c) communications between TPUSA and SFM concerning Tour funding and fundraising; and (d) information provided by multiple former SFM and TPUSA personnel with firsthand knowledge of the Tour, SFM's fundraising practices, and the TPUSA funding arrangement, including Richie Booth,

James Dumont, Jay Koopman, Jon Root, Lia Fischer, and others (collectively, the "Former SFM/TPUSA Personnel").

25. The Former SFM/TPUSA Personnel held roles that provided them with firsthand knowledge of SFM's administration of the 2023 Tour, SFM's communications and dealings with TPUSA concerning Tour funding, SFM's submission of invoices and reimbursement materials to TPUSA for all expenses incurred at all 50 state-capitol events, and the implementation of the funding arrangement during the Tour. The Former SFM/TPUSA Personnel include individuals who participated in Tour operations, fundraising, financial administration, and communications between SFM and TPUSA.

26. Based on their firsthand knowledge, the Former SFM/TPUSA Personnel can testify that, before Feucht's March 6, 2023 solicitation of Plaintiff, SFM and TPUSA had reached a funding arrangement under which TPUSA agreed to fund all of the costs of the Tour, including staff compensation, permits, travel, hotels, band expenses, fuel, bus-driver compensation, parking, food, and other Tour-related expenses.

27. The Former SFM/TPUSA Personnel possess nonpublic information concerning the timing, formation, administration, and implementation of the TPUSA arrangement, including facts concerning SFM's submission of all Tour expenses to TPUSA for all 50 state-capital events and the knowledge of persons acting for SFM in connection with Tour fundraising and expense reimbursement, including Feucht's personal knowledge of the arrangement prior to March 6, 2023.

28. Upon entry of an appropriate protective order or other court-authorized discovery mechanism addressing applicable confidentiality obligations, the Former SFM/TPUSA Personnel can provide testimony and, where appropriate, documents concerning the formation, scope, implementation, and financial effect of the TPUSA arrangement.

29. Contemporaneous records independently corroborate the Former

SFM/TPUSA Personnel's account of the TPUSA arrangement and its implementation. Those records include SFM Invoice No. 83492, dated July 5, 2023, through which SFM billed TPUSA $50,950 for Tour expenses, including band honoraria, SFM staff compensation, videography, and bus-driver compensation; and SFM Invoice No. 080123, dated August 1, 2023, through which SFM billed TPUSA an additional $30,950 for Tour-related expense categories. Plaintiff also possesses or has reviewed a September 29, 2023 communication from TPUSA to Feucht that summarizes payments made under the arrangement and addresses provisions governing Tour fundraising. These records do not merely show that TPUSA later had some relationship with SFM. Together with the firsthand information of the Former SFM/TPUSA Personnel, these records corroborate that the arrangement existed before the March 6, 2023 solicitation, covered all of the Tour costs, and was thereafter implemented through SFM's invoicing and reimbursement requests to TPUSA. Feucht had actual knowledge of the arrangement before the March 6, 2023 solicitation.

30. Certain Former SFM/TPUSA Personnel personally handled, participated in preparing, and/or had direct access to SFM invoices and reimbursement materials submitted to TPUSA during the Tour. Based on that firsthand knowledge, those individuals can testify that SFM submitted all of the expenses incurred for the Tour dates to TPUSA for payment or reimbursement and that Feucht was fully aware of TPUSA's agreement to cover all of the Tour expenses prior to the March 6, 2023 solicitation.

31. The TPUSA arrangement existed before Feucht solicited Plaintiff on March 6, 2023 and covered all of the costs necessary to conduct the Tour for which Feucht sought Plaintiff's contribution. Accordingly, at the time of the solicitation, Feucht knew that TPUSA had agreed to fund the Tour entirely and that SFM did not need Plaintiff's or any other person's contribution to fund the Tour expenses – the very expenses that Feucht represented to Plaintiff during the March 6, 2023 in-person

meeting required financial support. Feucht's solicitation and omissions was materially misleading because he represented that SFM needed Plaintiff's additional funds for the Tour without disclosing the preexisting TPUSA arrangement. Feucht therefore represented a Tour funding need that he knew did not exist as represented.

32. Feucht's March 6, 2023 representations and omissions were false because, in response to Bray's inquiry concerning SFM's existing financial resources, Feucht represented that SFM's available funds were already committed or allocated to other projects and that SFM needed approximately $50,000 in funding for each planned state-capitol event when, in fact, Feucht knew, before the March 6, 2023 solicitation, that TPUSA had already agreed to fund all of the Tour costs. Feucht's omission of the TPUSA funding agreement was material because it concealed the fact that SFM did not have a funding need for the Tour whatsoever.

33. Had Feucht disclosed that TPUSA had already agreed to fund all of the costs of the Tour, Plaintiff would not have made the $250,000 payment to SFM through NCF. Plaintiff's injury occurred when it was fraudulently induced to authorize the payment. Plaintiff's claims do not require tracing the specific dollars comprising the grant after SFM received them, proving a later transfer of those dollars to Feucht personally, or proving that the grant financed a particular later expense.

34. Plaintiff did not know nor did it have any reason to know or suspect that TPUSA had previously entered into a funding arrangement with SFM concerning the Tour when it made the $250,000 payment. SFM and Feucht did not disclose that arrangement, its scope, or its effect on the funding need represented to Plaintiff. Plaintiff had no access to SFM's nonpublic Tour budgets, TPUSA agreement or communications, reimbursement requests, invoices, payment records, internal accounting records, or donor-management records. Nor had any person otherwise informed Plaintiff of the TPUSA funding agreement.

35. Plaintiff had no reason at the time of the March 2023 payment to suspect that SFM's asserted need for additional Tour funding was false or misleading. The

NCF record identified the contribution as relating to "2023 worship at capitals and other cities," and SFM accepted the contribution after Feucht had solicited it in connection with the Tour. The Tour events thereafter proceeded, which was consistent with Feucht's representation that Plaintiff's contribution was being used to support the Tour and gave Plaintiff no reason to suspect that TPUSA had already agreed to fund the Tour and was funding all of the Tour's expenses without contribution from Plaintiff. Neither Feucht nor any other person at SFM subsequently disclose to Plaintiff the TPUSA arrangement or otherwise inform Plaintiff that the Tour funding need Feucht had presented was already funded by TPUSA let alone did Feucht or SFM offer to return the $250,000 payment as a result of TPUSA's funding of the Tour expenses in their entirety.

36. It was not until July 2025 that Plaintiff had any reason to suspect that it may have been defrauded by Feucht and SFM. Specifically, in approximately July 2025, Bray spoke with Dave Hess, who advised him that Michael Miller of Remnant Radio had raised concerns about the financial practices of Feucht-related organizations and had communicated with persons possessing inside knowledge. Hess directed Bray to Miller. Miller, in turn, connected Bray with Richie Booth, who had been involved with the finances of Burn 24-7, another Feucht-related ministry.

37. In approximately July 2025, Bray spoke with Booth. Booth informed Bray, in substance, that the financial books and records of Feucht-related ministries did not correspond with representations made in soliciting donations and that ministry funds were handled differently than donors had been led to understand. This was the first information Plaintiff received that caused it to suspect that the representations made in connection with the March 2023 solicitation might not accurately reflect SFM's actual financial need or the financial arrangements supporting the Tour.

38. Plaintiff promptly began investigating after the July 2025 discussion with Booth. To that end, Bray retained counsel on August 1, 2025. Plaintiff and counsel reviewed the contemporaneous records concerning Plaintiff's payment,

including the March 2023 NCF transaction record, the March 6, 2023 meeting materials, communications concerning the payment, and SFM's financial materials provided to Plaintiff before the payment was made. Plaintiff and counsel also investigated the relevant entities and sought information from persons with firsthand knowledge of SFM's fundraising, financial practices, and Tour operations.

39. Through that investigation, in or about July 2025, Plaintiff learned of the TPUSA arrangement from persons with firsthand knowledge, including members of the Former SFM/TPUSA Personnel, and reviewed records corroborating that arrangement, including SFM invoices submitted to TPUSA and communications concerning the TPUSA funding arrangement. Because the relevant agreement, communications, invoices, reimbursement records, and related internal records were nonpublic and controlled by SFM, TPUSA, or persons subject to confidentiality obligations, Plaintiff could not reasonably have discovered the material facts earlier through ordinary and reasonable diligence than it did.

40. Plaintiff filed this action on March 6, 2026, approximately eight months after the July 2025 disclosures first put Plaintiff on notice of facts warranting investigation. Plaintiff has acted with reasonable diligence in investigating the claims from that time forward. The investigation remains constrained by the nonpublic nature of the relevant documents and the confidentiality obligations applicable to certain Former SFM/TPUSA Personnel, which may be addressed through appropriate discovery and protective-order procedures.

## <u>FIRST CAUSE OF ACTION</u>

## FRAUDULENT MISREPRESENTATION

41. Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

42. On March 6, 2023, at Plaintiff's Anaheim, California office, Feucht, acting on behalf of SFM, represented to Bray the other meeting participants that SFM was planning a 50 state-capitol tour and that it was soliciting a charitable contribution

from Plaintiff to cover the cost of the Tour for several of the capitol events.

43. As part of Feucht's presentation, he represented to Bray and the other meeting participants that the cost of conducting one of the contemplated state-capitol Tour events was approximately $50,000. When Bray asked about approximately $5 million in resources SFM appeared to have available based on the 2022 Financial Statement, Feucht represented that those funds were already committed to other projects and that SFM needed funding for the planned 50 capitol events.

44. Feucht made the approximately $50,000-per-event representation orally in the presence of Bray, Nancy Bray, Sam Cerny, Mike Lang, Steve Nameroff, Beth Kaura, and Dan Dyk. The participants in the meeting, and each of them, heard that representation. Based on Feucht's representation concerning the cost of each event and SFM's stated need for funding, Plaintiff agreed to provide $250,000, an amount equivalent to the represented cost of five Tour events, to SFM.

45. At no time during the March 6, 2023 in-person meeting, or any time thereafter, did Feucht disclose to Plaintiff that SFM had already entered into a funding agreement with TPUSA under which TPUSA agreed to fund of the costs of the same Tour.

46. Feucht's representations concerning SFM's financial need were false when made because SFM had no such need at the time of the March 6, 2023 solicitation. Rather, before the March 6, 2023 in-person meeting, SFM had already entered into a funding arrangement with TPUSA under which TPUSA agreed to fund all of the costs of the Tour, including staff compensation, permits, travel, hotels, band expenses, fuel, bus-driver compensation, parking, food, and related Tour expenses. Feucht nevertheless represented that SFM needed approximately $50,000 in funding for each planned state-capitol event because its existing resources were committed or allocated elsewhere, without disclosing the TPUSA arrangement. Plaintiff does not allege that the approximately $50,000 cost figure itself was necessarily false; the alleged fraud lies in Feucht's knowingly false representation that SFM needed ***any***

donor funding for Tour expenses when Feucht already knew, at that time he made that representation, that TPUSA had agreed to fund all of Tour expenses, which TPUSA subsequently funded.

47. Feucht knew the representations concerning SFM's need for Tour funding were false when made. As alleged above, the TPUSA funding arrangement existed before March 6, 2023, Feucht had firsthand knowledge of the TPUSA agreement before March 6, 2023. The Former SFM/TPUSA Personnel possess firsthand knowledge concerning the preexisting funding arrangement and Feucht's knowledge of it and can provide testimony concerning those matters through appropriate discovery subject to applicable confidentiality protections.

48. Feucht intended that Plaintiff rely on his false representations concerning SFM's funding need and the approximately $50,000 cost per Tour event as well as his intentional omission of the TPUSA funding agreement as Feucht knew that Plaintiff would not provide any payment to SFM had it known that TPUSA has already agreed to fund all of the Tour expenses.

49. Plaintiff reasonably relied on Feucht's representations and omissions at the March 6, 2023 in-person meeting. In fact, the very next day, on March 7, 2023, Plaintiff sent $250,000 to SFM through NCF. NCF's records identify the recipient of Plaintiff's $250,000 payment as "Let Us Worship (Sean Feucht Ministries)" and state in the "Note to Charity" field: "Other/Multiple – 2023 worship at capitals and other cities." Plaintiff's payment to SFM, through NCF, was completed on March 8, 2023, and cleared on March 13, 2023.

50. The existence and terms of the TPUSA funding arrangement were material to Plaintiff's decision. Had Feucht disclosed that TPUSA had already agreed to fund all of the costs of the Tour, Plaintiff would not have made the $250,000 payment.

51. As a direct and proximate result of Feucht's fraudulent inducement on behalf of SFM, Plaintiff made the $250,000 payment and suffered resulting economic

loss in an amount to be proven at trial.

52. As a direct and proximate result of Feucht's fraudulent inducement on behalf of SFM, Plaintiff irrevocably caused a $250,000 payment to be made to SFM through NCF. Plaintiff thereby lost money or property in the amount of $250,000, or such other amount as may be established at trial, subject to any offset or other limitation required by law.

**SECOND CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

52. Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

53. On March 6, 2023, Feucht, acting on behalf of SFM, made affirmative representations to Plaintiff that SFM's existing resources were committed, that SFM needed additional funds to complete the planned capital events, and that the cost of a contemplated state-capitol Tour event was approximately $50,000.

54. Feucht lacked reasonable grounds for representing that SFM required the donor funding he solicited in light of the fact that TPUSA had already agreed to fund all of the Tour expenses prior to the March 6, 2023 meeting. The existence and scope of the TPUSA funding arrangement directly bore on the reasonableness of Feucht's representation that SFM's existing resources were committed or allocated elsewhere and that approximately $50,000 in additional donor funding was needed for each planned state-capitol event.

55. The Former SFM/TPUSA Personnel possess firsthand knowledge concerning the preexisting TPUSA arrangement and facts bearing on Feucht's knowledge of that arrangement, which may be developed through appropriate discovery subject to applicable confidentiality protections.

56. Feucht intended that Plaintiff rely upon his representations in deciding whether, and in what amount, to provide financial support to SFM.

57. Plaintiff reasonably relied upon those representations and made the

$250,000 payment described above.

58. Had the true facts concerning the preexisting TPUSA funding arrangement been disclosed or otherwise known to Plaintiff at the time it made the $250,000 payment, Plaintiff would not have made the payment at all.

59. Plaintiff did not discover, and through reasonable diligence could not have discovered, the facts underlying the misrepresentations until July 2025, in the manner alleged above.

60. As a direct and proximate result of the negligent misrepresentations alleged above, Plaintiff suffered economic loss in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

## CIVIL THEFT BY FALSE PRETENSES UNDER CAL. PENAL CODE § 496(c)

61. Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

62. On March 6, 2023, Feucht, acting on behalf of SFM, intentionally represented to Plaintiff that SFM needed approximately $50,000 in funding for each contemplated state-capitol Tour event because its existing resources were already committed or allocated elsewhere. At the time that Feucht made these representations, he knew that they were false and that he intended to make these false representations in order to coerce Plaintiff into making a payment to SFM in the amount of $250,000, which Feucht knew Plaintiff would not have made but for his false representations.

63. At the time Feucht represented SFM's fabricated funding need, Feucht knew that SFM had already secured funding for all Tour expenses from TPUSA and that SFM had no need for any of the funding it was soliciting from Plaintiff.

64. Nonetheless, Feucht intentionally withheld the TPUSA funding arrangement from Plaintiff.

65. Feucht made the false representations and intentionally concealed the TPUSA funding agreement with the intent to defraud, and for the purpose of inducing,

Plaintiff into paying SFM a sum of $250,000.

66. As a direct and proximate result of Feucht's representations and omissions, SFM was successful in misleading Plaintiff into believing that its $250,000 payment would be used for Tour expenses and, in turn, into convincing Plaintiff into paying SFM, through NCF, a total of $250,000.

67. Plaintiff did not discover the facts establishing the alleged false pretenses until approximately July 2025 and thereafter exercised reasonable diligence in investigating the matter, as alleged herein.

68. Plaintiff seeks the remedies available under California Penal Code section 496(c), including treble damages, reasonable attorneys' fees, and costs.

## FOURTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES UNDER CAL. BUS. & PROF. CODE § 17200

69. Plaintiff incorporates paragraphs 1 through 68 as though fully set forth herein.

70. SFM engaged in unlawful, unfair, and/or fraudulent acts and practices in connection with its solicitation and receipt of Plaintiff's charitable contribution, including Feucht's direct solicitation of Plaintiff on SFM's behalf and SFM's related donor-facing financial representations.

71. SFM's conduct was unlawful within the meaning of California Business and Professions Code section 17200 because it constituted theft in violation of Penal Code section 484.

72. SFM's conduct was fraudulent within the meaning of California Business and Professions Code section 17200 because, upon information and belief, Feucht engaged in a pattern and practice of falsely representing to multiple donors, including but not limited to Plaintiff, that SFM needed funding to cover the expense of the Tour when, in fact, Feucht and SFM knew that no such need existed as a result of the TPUSA funding agreement. Such representations were material and were not

only likely to deceive the public (donors and prospective donors), but they actually deceived the public, including Plaintiff and other donors, into paying SFM for a need that it did not actually have.

73. SFM's conduct was also unfair because Plaintiff was induced to provide $250,000 based upon materially false, incomplete, or misleading information concerning the financial need for which the contribution was solicited when, in fact, no such need actually existed.

74. Plaintiff lost money or property as a result of SFM's conduct when it authorized and caused the $250,000 paymwent to be made to SFM, through NCF, as a result of Feucht's materially misleading representations and omissions.

75. Plaintiff seeks restitution of the monies it paid to SFM money together with such injunctive or other equitable relief as is authorized by California Business and Professions Code § 17200 *et seq*.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests judgment in its favor and against Defendant SFM for:

1. Compensatory damages in an amount to be proven at trial;
2. Restitution and other equitable relief available under applicable law;
3. Treble damages, reasonable attorneys' fees, and costs to the extent recoverable under California Penal Code section 496(c);
4. Punitive damages as permitted by law;
5. Pre- and post-judgment interest;
6. Taxable costs and any other attorneys' fees recoverable by law; and
7. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury.

Dated: September 30, 2026

**NEWMAN JONES PLLC**

By */s/ Christine N. Jones*
Christine N. Jones, Esq. (*Pro Hac Vice*)
Alexandra V. Boles, Esq. (*Pro Hac Vice*)
Attorneys for Plaintiff
S.R. BRAY, LLC